In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00101-CR

                                                ______________________________

 

 

                                 CARL LEONARD LIVELY,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 402nd
Judicial District Court

                                                             Wood County, Texas

                                                       Trial Court
No. 20,292-2008

 

                                                     
                                             

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            A small
fender bender in a Wal-Mart parking lot led to the fortuitous discovery of
evidence connecting Carl Leonard Lively to a gas station armed robbery.  He was convicted of aggravated robbery by a
jury, sentenced by the trial judge to forty years’ imprisonment, and was
ordered to pay a $10,000.00 fine.  Lively
appeals the judgment of the trial court on grounds that the evidence was
insufficient to support his conviction, his counsel rendered ineffective
assistance, and the trial court erred in denying his motion to suppress.  He also argues that the trial court abused
its discretion in overruling Rule 404(b) objections to testimony and evidence
obtained from his vehicle after the accident. 
We affirm the trial court’s judgment. 

I.        Factual
and Procedural History 

 

            Barbara
Ann Bryant worked as a clerk for J&J Fastop located in an Exxon gas station
in Hawkins, Texas.  There were no
customers in the store around 8:28 p.m. when she “saw a dark-colored SUV pull
up.”  “[A] white man came in with a
camouflage hat and a bandana . . . covering up his nose.”  The tall, slender man was in his late forties
or early fifties, had uneven ears, with one sitting higher than the other,
“salt-and-peppered colored hair, and bushy eyebrows of the same color.”  He was wearing sunglasses, blue jeans, dark
work-style boots, and a black belt with a rectangular metal buckle.  The man wielded a gun in Bryant’s direction
and commanded her to “[o]pen the drawer and give me your money.”  A shocked Bryant frantically placed the money
from the cash register on the counter. 
She complied with the robber’s requests to retrieve more money from
underneath the counter and stuff all the cash in a bag.  While grabbing the money and pointing the gun
at Bryant, he said, “Go to the back of the store and don’t look back.”  

            Bryant ran
to the back of the J&J Fastop and called the police as soon as she was sure
the robber had left.  Officer A. J.
Randell and Officer Eileen Standfield arrived to find Bryant in a hysterical,
hypoglycemic state.  Bryant calmed down
after drinking a soft drink and told the officers the man was in a dark-colored
blue or black Chevy Tahoe.[1]  The gas station was monitored by several
surveillance cameras placed at different angles both inside and outside the
J&J Fastop.  Review of the video
recordings confirmed the description given by Bryant.  The only car seen arriving and leaving the
Exxon parking lot immediately before and after the robbery was a dark blue
Chevy Tahoe with a luggage rack, trailer hitch, bug shield, and brake light at
the top back of the vehicle.  Randell
took pictures from the surveillance cameras to a local mechanic who identified
the vehicle as a 2002 model.  The
officers issued a broadcast advising fellow law enforcement to be on the
lookout for a 2002 or newer model Suburban driven by a white male in his late
forties with gray hair.  The broadcast
described the man as five foot and ten or eleven inches tall weighing
approximately 190 to 200 pounds. 
Unfortunately, the robber absconded and three months passed without
leads on a suspect.   

            Fortuitously, Sergeant Damon
Boswell experienced a breakthrough on the case while monitoring the handicapped
zones in a Wal-Mart parking lot in Gun Barrel City.  He heard the crash of a minor collision
between a small white vehicle and dark blue 2002 Tahoe with a luggage rack,
trailer hitch, bug shield, and brake light at the top back of the vehicle.  Lively, who was driving the Tahoe, “was
outside of the vehicle and shaking, visibly nervous.”  Boswell radioed the Tahoe license plate to
dispatch and asked for Lively’s driver’s license.  The license plate did not match the Tahoe and
Lively’s driver’s license was expired. 
Boswell received reports that a blue Tahoe had been involved in a
robbery.  He noted that the Tahoe “had
Scotch tape on the outside of the windshield over the registration certificate
where the license number is and VIN number.” 
Boswell knew Scotch tape is used to blur numbers so they cannot be
captured by surveillance cameras.  He
asked for consent to search the Tahoe. 
Lively asked why Boswell wanted to search, and Boswell stated it was due
to the way Lively was acting.  Lively
then responded, “[W]ell, if you feel like looking in there, look in
there.”  

            Boswell
found a loaded and chambered gun in the Tahoe, along with bandanas, four or
five license plates, and hats, including a camouflage hat.  He took pictures of the evidentiary items and
of Lively, who was wearing blue jeans, sunglasses, dark work-style boots, and a
belt with a rectangular metal buckle.  He
radioed the license plate to dispatch again. 
This time, the license plate matched the Tahoe and confirmed Boswell’s
suspicions that Lively switched the license plates while Boswell was speaking
with the owners of the other car involved in the accident.  Lively was arrested for his expired driver’s
license. 

            Randell
travelled to Gun Barrel City, saw that the evidence from the Wal-Mart stop
matched the description of the gun, person, and vehicle involved in the J&J
Fastop robbery, and obtained a warrant for Lively’s arrest.    

 

II.       The Evidence Was Legally and Factually
Sufficient 

 

            A.       Standard
of Review

 

            We review
the legal and factual sufficiency of the evidence supporting a conviction under
well-established standards.  In
conducting a legal sufficiency review, we consider the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.  Laster v. State, 275 S.W.3d
512, 517 (Tex. Crim. App. 2009).  We must give deference to “the responsibility
of the trier of fact to fairly resolve conflicts in testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate
facts.”  Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307,
318–19 (1979)).  We are not required to
determine whether we believe that the evidence at trial established guilt
beyond a reasonable doubt; rather, when faced with conflicting evidence, we
must presume that the trier of fact resolved any such conflict in favor of the
prosecution, and we must defer to that resolution.  State
v. Turro, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).  In conducting a factual sufficiency review,
we consider the evidence in a neutral light. 
Watson v. State, 204 S.W.3d
404, 414–15 (Tex. Crim. App. 2006).  We
may find evidence factually insufficient in two ways:  (1) the evidence supporting the conviction is
“too weak” to support the fact-finder’s verdict, or (2) considering the
conflicting evidence, the fact-finder’s verdict is against the great weight and
preponderance of the evidence.  Laster, 275 S.W.3d at 518.  In so doing, we may only find the evidence
insufficient when necessary to prevent manifest injustice.  Id.  Both legal and factual sufficiency are
measured by the elements of the offense as defined by a hypothetically correct
jury charge.  Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Grotti v. State, 273 S.W.3d
273, 280 (Tex. Crim. App. 2008). 

            In  Lively’s  case,  the
 State  had  to  prove  that
 (1)  Lively;  (2) 
committed theft of property; (3) intended to obtain or maintain control
over that property; (4) intentionally or knowingly threatened or placed Bryant
in fear of imminent bodily injury or death; (5) while exhibiting or using a
deadly weapon (here, a firearm).  Tex. Penal Code Ann. §§ 29.02, 29.03
(Vernon 2003).  
            B.        Analysis 

            Lively’s
appellate challenge to the sufficiency of the evidence focuses solely on
identity and does not challenge the remaining elements. 

            At trial,
all of the facts above were relayed to the jury.  Specifically, Bryant testified to the
robber’s description and told the jury he was driving a dark colored SUV.  Bryant identified Lively in court and said
she was certain he was the person who robbed her at the J&J Fastop.  She identified him “from the nose up and the
side of his hair,” by the top of his cheekbones, and “[b]ecause as far as his
ears goes, one sits higher than the other.” 


            Randell
testified the pictures taken by Boswell matched the vehicle and description of
the robber at the J&J Fastop.  He
told the jury that he believed the gun found at Wal-Mart was the same as the
gun used in the robbery.  The jury viewed
the videos of the robbery, admitted without objection, and was able to compare
them to the pictures of evidence recovered by Boswell during the Wal-Mart
accident.    

            We conclude this evidence was
legally sufficient to allow the jury, who was free to resolve conflicts in the
testimony and evidence, to determine whether Lively was the person who robbed
the J&J Fastop.  

            In
addressing factual sufficiency, Lively points out that the robber was wearing a
bandana covering his face, that Bryant was looking at the gun in the robber’s
hands, and that Bryant may have said initially that the robber was driving a
two-tone brown and white Suburban, and misidentified the color of the gun as
black instead of blue steel.  Lively also
complains that Bryant’s in-court identification, which was not objected to at
trial, was tainted by her attending another robbery trial in which Lively was
the defendant and that Bryant’s identification of the getaway vehicle as a dark
Tahoe after viewing the surveillance videos was based on circumstantial
proof.  Examining the contrary evidence in
a neutral light, we cannot conclude the proof of Lively’s guilt was obviously
weak as to undermine confidence in the verdict. 
  

            We conclude
the evidence was both legally and factually sufficient to support the jury’s
verdict that Lively was the person who committed aggravated robbery at the
J&J Fastop.  Lively’s sufficiency
points of error are overruled.  

III.       The Trial Court Did Not
Err in Denying the Motion to Suppress 

 

            Next, Lively’s counsel moved to suppress the pictures and evidence found in the
Wal-Mart parking lot.  He argues that the
trial court erred in determining Lively gave his consent to search the
Tahoe.  

            The
trial court’s decision to deny Lively’s motion to suppress will be reviewed for
abuse of discretion.  Oles v. State,
993 S.W.2d 103, 106 (Tex. Crim. App. 1999); Villarreal v. State, 935
S.W.2d 134, 138 (Tex. Crim. App. 1996); Maysonet v. State, 91 S.W.3d
365, 369 (Tex. App.—Texarkana 2002, pet. ref’d).  This particular review of the motion to
suppress only involves the fact question of whether Lively gave consent to
search.  Because the trial court is the
exclusive trier of fact and judge of witness credibility at a suppression
hearing, we afford almost total deference to its determination of facts
supported by the record.  State v.
Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Carmouche v. State,
10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997).  Since all
evidence is viewed in the light most favorable to the trial court’s ruling, we
are obligated to uphold it if that ruling was supported by the record and was
correct under any theory of law applicable to the case.  Ross, 32 S.W.3d at 856; Carmouche,
10 S.W.3d at 327; State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App.
1999); Maysonet, 91 S.W.3d at 369.

            Lively’s consent to search the vehicle,
if otherwise voluntary, was effective to legalize the search of the Tahoe if
given within the scope of the accident traffic stop.  See Florida v. Royer, 460 U.S. 491, 501
(1983).  In Texas, the State is required
to prove the voluntariness of consent by clear and convincing evidence based on
the totality of the circumstances.  See Reasor v. State, 12 S.W.3d 813, 818
(Tex. Crim. App. 2000); Malone v. State,
163 S.W.3d 785, 800 (Tex. App.—Texarkana 2005, pet. ref’d). 

            Whether
consent was given freely and voluntarily is to be answered by looking at the
totality of the circumstances surrounding the consent.  See Schneckloth v. Bustamonte, 412 U.S. 218,
226 (1973); Fancher v. State, 659
S.W.2d 836, 839 (Tex. Crim. App. 1983).  For
consent to be valid, the State must show by clear and convincing evidence that it
was not “coerced, by explicit or implicit means, by implied threat or covert
force.”  Schneckloth, 412 U.S. at 228; Allridge
v. State, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991) (en banc).  In determining whether consent was voluntary,
courts consider various factors, including whether the consenting person was in
custody, whether he or she was arrested at gunpoint, whether he or she had the
option of refusing consent, the constitutional advice given to the accused, the
length of detention, the repetitiveness of the questioning, and the use of
physical punishment.  See Flores
v. State, 172 S.W.3d 742, 749 (Tex. App.—Houston [14th Dist.] 2005, no
pet.).  The voluntariness of consent to search
does not require proof of the defendant’s knowledge of a right to refuse the
search.  Schneckloth, 412
U.S. at 234. 

            During
the hearing on the motion to suppress, Lively was merely asked, “Did you give
consent for the search of your vehicle,” to which he replied, “No, I did
not.”  Lively provided no other testimony
or explanation of the situation involving consent.  There was no testimony or argument in
Lively’s brief that he was in custody when Boswell asked for consent, was
arrested at gunpoint, was the subject of physical force, suffered a lengthy
detention, or was given any advice regarding consent.  

            The State chose not to cross-examine
Lively.  Instead, it introduced a
stipulation in which both parties agreed Lively had been previously convicted
of a crime of moral turpitude.  Next, the
State called Boswell, who testified that he asked for consent and Lively asked
why he needed it.  After Boswell
explained he wanted to search the Tahoe because of the way Lively was acting,
Lively said, “[W]ell, if you feel like looking in there, look in there.”[2]  

            The trial
court was the exclusive trier of fact and judge of witness credibility at the
suppression hearing.  It found Lively
consented to the search.  As the
fact-finder, the court was free to believe Boswell’s testimony and disregard
Lively’s testimony.  Because the record
supports the trial court’s finding of consent, we afford the proper deference
to its determination and conclude that it did not abuse its discretion in
overruling Lively’s motion to suppress the evidence obtained as a result of the
accident investigation.        

IV.       The Trial Court Did Not Err in Admitting
Evidence from the Gun Barrel City           Arrest

 

            Lively contends the trial court
“erred in admitting 404(b) evidence obtained during Appellant’s Gun Barrel City
arrest to prove his identity as the suspect”[3]
in the J&J Fastop robbery.  A trial
court’s decision to admit or exclude evidence is reviewed only for abuse of
discretion.  McDonald v. State, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); Willover v. State, 70 S.W.3d 841, 845
(Tex. Crim. App. 2002).  A trial court
does not abuse its discretion as the decision to admit evidence is within the “zone
of reasonable disagreement.”  Montgomery v. State, 810 S.W.2d 372, 391
(Tex. Crim. App. 1990) (op. on reh’g).  We may not substitute our own decision for
that of the trial court.  Moses v. State, 105 S.W.3d 622, 627
(Tex. Crim. App. 2003).  If the trial
court’s decision on the admission of evidence is supported by the record, there
is no abuse of discretion, and the trial court will not be reversed.  Osbourn
v. State, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); Montgomery, 810 S.W.2d at 379.

            The general rule
is that all evidence having any tendency to make the existence of any fact that
is of consequence to the determination of the action more or less probable is
admissible.  Tex. R. Evid. 401, 402. 
However, unless admitted “for other purposes, such as . . . identity,”
evidence of other crimes, wrongs, or acts is not admissible “to prove the
character of a person in order to show action in conformity therewith.”  Tex.
R. Evid. 404(b).  “Rule 404(b) is
a rule of inclusion rather than exclusion.” 
De La Paz v. State, 279 S.W.3d
336, 343 (Tex. Crim. App. 2009).  The
rule only excludes evidence that is offered or will be used solely for the
purpose of proving bad character and hence conduct in conformity with that bad
character.  Id. at 343 (citing Rankin v.
State, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996) (“if evidence (1) is
introduced for a purpose other  than  character  conformity,  (2)  has
 relevance  to  a  ‘fact  of
 consequence’  in the case and (3) remains free of any other
constitutional or statutory prohibitions, it is admissible”)). 

            The
photographs of Lively, his Tahoe, and its contents were relevant.  Identity of the J&J Fastop robber was a
fact of consequence in the case, and the evidence obtained at Wal-Mart made the
determination of whether Lively was the robber more probable, a fact pointed
out by the State.  Contrary to Lively’s
contention, because the incident at Wal-Mart was not another robbery, the
photographs could not have been shown to the jury “to prove the character of a
person in order to show action in conformity therewith.”  In making its ruling, the trial court
understood that the “photographs . . . are not going to the other crime, it’s
going to go to the things found at the scene of the accident.”  We conclude the trial court did not journey
beyond the zone of reasonable disagreement in concluding Rule 404(b) did not
preclude inclusion of the photographs taken during the Wal-Mart accident and
arrest.[4]  

            During the
guilt/innocence phase, Boswell testified he heard reports while working the
accident that a blue Tahoe was used in a previous robbery nearby.  Counsel’s objection to admission of this type
of testimony was overruled.  On appeal,
Lively argues the trial court erred in allowing Boswell’s testimony because it
constituted an inadmissible extraneous offense. 
We disagree.  

            Again,
evidence of other crimes, wrongs, or acts is not admissible “to prove the
character of a person in order to show action in conformity therewith.”  Tex. R. Evid. 404(b) (emphasis
added).  To constitute an extraneous
offense, the evidence must show a bad act or crime, and that the defendant was
connected to it.  Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993) (quoting
Lockhart v. State, 847 S.W.2d 568,
573 (Tex. Crim. App. 1992)).  Where the
State does not tie the defendant to a previous act, it is not being used to
show “that person’s actions in
conformity with such character.”  Rodriguez v. State, 975 S.W.2d 667, 684
(Tex. App.—Texarkana 1998, pet. ref’d).  

            Rodriguez
was convicted of aggravated robbery for theft of a wallet accomplished by
threat of a handgun.  Id. at 671.  In that case, the arresting officer testified
the vehicle Rodriguez was in had been reported stolen, a fact which the officer
claimed Rodriguez later admitted.  Id. at 683.  This Court reasoned that because the
officer’s statements were not specifically connected to Rodriguez, and nothing
in the evidence suggested he stole the car or knew the car was stolen before
his arrest, the officer’s statements could not be interpreted as testimony of
any prior bad act by Rodriguez.  Id. at 684.  Thus, we ruled that Rule 404(b) did not apply
to bar the officer’s testimony.  Id. 


            Here, the
State did not allege, and Boswell did not testify that it was Lively’s blue
Tahoe that was used in the previous robbery or that Lively had committed the
robbery.  As in Rodriguez, we conclude Boswell’s testimony, which did not refer to
any prior bad act by Lively, was not barred by Rule 404(b) because it was not
being used to show action in conformity therewith.  

            These
points of error are overruled. 

 

V.        Ineffective Assistance of Counsel

 

            Allegations of ineffectiveness must be
firmly founded in the record.  Wallace
v. State, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), aff’d, 106 S.W.3d 103 (Tex. Crim.
App. 2003); Goodspeed v. State,
187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Thompson v. State,
9 S.W.3d 808, 813 (Tex. Crim. App. 1999). 
Absent an opportunity for the attorney to explain the questioned
conduct, we will not find deficient performance unless the challenged conduct
was “so outrageous that no competent attorney would have engaged in it.”  Goodspeed, 187 S.W.3d at 392; Fox
v. State, 175 S.W.3d 475, 486 (Tex. App.—Texarkana 2005, pet. ref’d).  For this reason, direct appeal is usually an
inadequate vehicle for raising such a claim because the record is generally
undeveloped.  Thompson, 9 S.W.3d at 813–14; Fox,
175 S.W.3d at 485.  

            We evaluate ineffective
assistance of counsel claims using the two-part Strickland test formulated by the United States Supreme Court,
which requires a showing of both deficient performance and prejudice.  Strickland
v. Washington, 466 U.S. 668, 687–88 (1984); Thompson, 9 S.W.3d at 812; Fox,
175 S.W.3d at 485.  First, Lively must
show that his counsel’s representation fell below an objective standard of
reasonableness.  Fox, 175 S.W.3d at 485 (citing Tong
v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000)).  There is a strong presumption that counsel’s
conduct fell within the wide range of reasonable professional assistance and
that the challenged action could be considered sound trial strategy.  Strickland, 466 U.S. at 689; Ex
parte White, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); Tong, 25 S.W.3d at 712.  Therefore, we will not second-guess the
strategy of Lively’s counsel through hindsight. 
Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); Hall
v. State, 161 S.W.3d
142, 152 (Tex. App.—Texarkana 2005, pet. ref’d).              

            The second Strickland prong requires a showing that
the deficient performance prejudiced the defense to the degree that there is a
reasonable probability that, but for the attorney’s deficiency, the result of
the trial would have been different.  Strickland, 466 U.S. at 689; Tong, 25 S.W.3d at 712.  Failure to satisfy either prong of the Strickland
test is fatal.  Ex parte Martinez,
195 S.W.3d 713, 730 (Tex. Crim. App. 2006). 


            Before trial, Bryant was subpoenaed by a
court in Tyler, Texas, on another robbery case in which Lively was the
defendant.  Bryant did not testify in
that trial.  A motion in limine was
granted preventing the State from mentioning or alluding to any pretrial
identification.  The State told the court
it did not anticipate discussing any pretrial identification.  During cross-examination of Bryant, the
following exchange occurred:

Q. 
Now, you have never seen that man that took your money on June 26th of
2007, since that time; is that correct? 

 

A. 
Yes.  

 

Q. 
But after all this time -- and this is the very first time that you’ve
seen this man sitting right here in this courtroom right?

 

A. 
I’ve seen him one time.  That’s
when I had to go to Tyler.  

 

Q. 
That was when?  

 

A. 
When I went to Tyler when he was brought over there.  

 

Q. 
You went to Tyler, Texas?  

 

A. 
That’s -- 

 

Q. 
Let’s talk about that.  

 

Counsel immediately asked to approach the bench and asked for
a hearing outside the presence of the jury. 
On appeal, Lively complains his counsel was ineffective because “he failed
to request a hearing outside the presence of the jury prior to opening the door
on cross-examination to testimony surrounding an impermissibly suggestive
pretrial identification by the victim.”  

            Although
Lively argues counsel’s questions “invited evidence of an impermissibly
suggestive pretrial identification,” the trial court confirmed that counsel’s
questions did not open the door to any pretrial identification.  We agree with the trial court on this
matter.  Bryant’s nonresponsive answer to
the question of whether she had seen Lively “in this courtroom” made no
reference to the Tyler court trial.  She
merely stated that she saw Lively in Tyler, Texas, and did not suggest that she
identified Lively as the robber at that time. 
In his brief, Lively did not expand on the need for a hearing outside
the jury’s presence on this issue; counsel had already obtained a favorable
ruling on a motion in limine regarding pretrial identification testimony.  We find no ineffective assistance of counsel
in this matter. 

            Lively also
complains his counsel was ineffective in failing to object to the in-court
identification by Bryant, which was tainted by allegedly impermissibly
suggestive identification procedures in Tyler. 
Before trial, counsel stated to the court his “position . . . that a
pretrial identification procedure was impermissibly suggestive and tainted the
in-court identification procedure.” 
After Bryant’s in-court identification, counsel objected and asked “the
Court to exclude her in-court identification of Carl Lively here in the court
today because it was tainted in an impermissibly suggestive way by the pretrial
identification procedures down in Tyler, Texas.”  Trial counsel objected to the pretrial
identification as being tainted, obtained a hearing to develop the issue, and
obtained an adverse ruling by the trial court. 
The fact that the hearing and ruling by the court occurred after the in-court
identification by the witness did not preclude the trial judge from excluding
and striking the testimony had he agreed that the identification was
improper.  Contrary to Lively’s
assertion, we find that counsel sufficiently objected to the in-court
identification.

            Nevertheless,
counsel would not be considered ineffective in this case had he failed to
object to the in-court identification. 
An in-court identification is examined based on the totality of the
circumstances to determine if a “suggestive procedure gave rise to a
substantial likelihood of irreparable misidentification.”  Wallace,
75 S.W.3d at 584.    

            Bryant’s in-court
identification was admissible if it was based on her observations at the time
of the offense and was not affected by the pretrial procedures.  Neil v.
Biggers, 409 U.S. 188, 198–99 (1972). 
We look to the opportunity of the witness to view the accused at the
time of the crime, the witness’ degree of attention, the accuracy of the
witness’ prior description of the accused, the level of certainty demonstrated
by the witness at the confrontation, and the length of time between the crime
and confrontation.  Wallace, 75 S.W.3d at 585 (citing Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998)).  

            Bryant said that her presence in the
Tyler courtroom did not have any effect on her in-court identification of
Lively.  The surveillance cameras
demonstrated that Bryant was close to Lively at the time of the robbery.  Although his face was covered by a bandana
and sunglasses, Bryant identified Lively based on characteristics such as his
hair color, eyebrows, top of his cheekbones, dissimilar ears, approximate age,
and height.  As to the degree of
attention, Bryant stated, “When somebody’s [sic] robs you at gunpoint and you
can see what you could see when they rob you, that’s something that does not go
away.”  Bryant’s statements given to
Randell, which formed the basis of the police broadcast, and her written
statement to the police also demonstrated her degree of attention and accuracy
relating to Lively’s physical description. 
Although the length of time between the robbery and trial does not favor
admission of the in-court identification, Bryant reiterated her certainty
throughout trial that Lively was the person who robbed her.  She claimed “if I wouldn’t have been in Tyler
when he was there, I still would have recognized him from the sideburns and the
ears.  Some facial descriptions, you
don’t—they—they don’t go away.”  Based on
the totality of the circumstances, Bryant demonstrated her in-court
identification was independently reliable. 


            We overrule this last point of
error.  

 

VI.      Conclusion 

 

            We affirm
the judgment of the trial court.  

 

 

 

 

            

                                                                                                Jack
Carter

                                                                                                Justice

 

Date Submitted:          April
29, 2010

Date Decided:             May
5, 2010

 

Do Not Publish

 

 

 

 











[1]Although
Officer Standfield’s report said, “Barbara, the lady who worked at the store,
told me he left in a two-tone, brown and white Suburban,” Bryant denied
identifying the vehicle as anything other than a dark-colored SUV.  





[2]Lively
attempted to impeach Boswell by introducing a transcript of a prior proceeding
in a different county in which Boswell stated he asked Lively for consent
twice.  Boswell said his comment was taken
out of context, that he only asked for Lively’s consent once and that Lively
never refused consent.  

  





[3]Contrary
to Lively’s assertion that the trial court denied his motion in limine based on
Rule 404(b) with respect to the photographic evidence obtained at Wal-Mart, the
record demonstrates his motion in limine was granted.    





[4]Lively
argues that Rule 404(b) should have prevented Boswell from testifying he
received reports that a blue Tahoe was used in a robbery near his
location.  The only objection raised to
Boswell’s statement, which did not mention that the other robbery involved
Lively or his Tahoe, was a hearsay objection. 
We need not address Lively’s unpreserved Rule 404(b) contention.